Filed 2/9/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ORGANIZACION COMUNIDAD DE ALVISO,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CITY OF SAN JOSE,<br><br>    Defendant and Respondent,<br><br>MICROSOFT CORPORATION et al.,<br><br>    Real Parties in Interest and Respondents. | H046458<br>(Santa Clara County<br>  Super. Ct. No. CV321687) |

Mark Espinoza, a member of plaintiff Organizacion Comunidad de Alviso, asked a planner for the City of San Jose to place him on the public notice list for a proposed project which would rezone fallow farmland for light industrial uses. He also twice specifically requested a copy of the notice of determination (NOD) documenting the city's certification of an environmental impact report (EIR) and approval of the project—once after the city council initially approved the project and again after the city council denied a motion for reconsideration and re-approved the project. The city filed two NOD's for the project: the first NOD listed the wrong project applicant and a second NOD correctly listed Microsoft Corporation. Despite Espinoza diligently and repeatedly requesting all notices for the project, the city—inexplicably and in violation of the

California Environmental Quality Act (CEQA)[1]—failed to send Espinoza the legally operative second NOD for the project.

Relying on the first NOD that the city did email to Espinoza, plaintiff named the wrong real party in interest in its initial petition for writ of mandate. Plaintiff did not file an amended petition naming Microsoft until well after the statute of limitations had run. The trial court determined that the initial petition was defective for failing to join Microsoft as a necessary and indispensable party, and it dismissed the CEQA cause of action in the amended petition as untimely. Had the trial court viewed the equities differently in exercising its discretion and determined the CEQA action could continue without Microsoft, the result here might be different. But that is not the case we are asked to review.

Plaintiff argues on appeal that the trial court applied the incorrect statute of limitations, and alternatively that the trial court should have applied either estoppel or the relation back doctrine (Code Civ. Proc., § 474) in light of the city's conduct. We acknowledge that the city violated CEQA by failing to send the second NOD to Espinoza. But the second NOD was properly filed with the county clerk, it provided constructive notice of the correct parties to sue, and plaintiff did not timely amend its petition to name Microsoft. Our close examination of the relevant statutes leads us to the uncomfortable conclusion that dismissal of the CEQA action was not error, and we must affirm the judgment.

## I. ADMINISTRATIVE AND TRIAL COURT PROCEEDINGS

Both NOD's describe the project as follows: "**237 Industrial Center**. The project site, approximately 64.5 acres, is primarily fallow farmland with two single-family houses, a mobile home, and farm-related accessory structures located near the southern portion of the site. The site is currently supported by well water and a septic

[1] CEQA is codified at Public Resources Code section 21000 et seq. Unspecified statutory references are to the Public Resources Code.

tank system.  The project includes two development options.  Option 1 proposes approximately 1.2 million square feet of light industrial development and Option 2 proposes up to a 436,880 square foot data center (49.5 megawatts) with a PG&E substation to provide the electrical needs for the data center on approximately 26.5 acres of the site and approximately 728,000 square feet of light industrial development. The project (both development options) includes rezoning from A(PD) – Planned Development to L1 Light Industrial.  Development Option 2 includes a special use permit and a development exception for reduced parking requirements."

Mark Espinoza is a member of plaintiff Organizacion Comunidad de Alviso. Espinoza emailed the city's environmental project manager for the project in September 2017, asking "to be placed on the noticing list and given dates and time[s] of any public hearings" for the project.  The project manager responded by email the same day, providing the dates of the planning commission and city council hearings for the project. That same month, Microsoft purchased the property from the original owner (Cilker) and filed a universal planning application with the city to take over as the project applicant.

The city council initially considered the project and the associated EIR at a hearing in October 2017.  The city council meeting agenda did not mention Microsoft and incorrectly referenced "Cilker Carl A And Kathleen C Trustee" as "Owners."  At the hearing, the mayor stated:  "Let's go to the applicant first and then we'll go to the public. Mr. Noble, will you be speaking for Microsoft?"  Cilker was referred to at the hearing as the "previous owner."  Espinoza attended the hearing and commented on the project.  The city council certified the project EIR; approved the project, including a water supply assessment; and imposed a mitigation monitoring and reporting program.

Espinoza emailed the project manager two days after the October hearing, requesting a copy of the NOD.  (His first email mistakenly asked for the "NOP," but he almost immediately followed up with an email clarifying that he sought the NOD.)  The project manager responded that someone had moved to reconsider the project approval,

3

that the city council would have an additional hearing in December 2017, and that the city was "waiting until after the hearing to consider filing the NOD."

The city council reconsidered and once again approved the project and its environmental document in December 2017. Although plaintiff's opening brief acknowledges that the December 2017 "hearing notice included the annotation 'Property Owner: Microsoft,' " the city council resolution approving the project still referred to the Cilkers as "Owners" in the middle of the first paragraph. The first NOD filed by the city with the county Clerk-Recorder incorrectly lists "Erik Schoennauer for Cilker Orchards MGMT Corp" as the project applicant. Espinoza emailed the project manager the day after the December hearing asking for the filed notice (again mistakenly referring to the notice as an "NOP" rather than an NOD). The project manager responded by email and attached the first NOD.

The city filed a second NOD for the project five days later, correctly showing Microsoft Corporation as the project applicant. The city did not rescind the first NOD, and the second NOD does not refer to it in any way. Despite Espinoza's earlier requests for all project-related notices, the city never sent him the second NOD.

Plaintiff filed its initial petition for writ of mandate within 30 days of the first NOD, alleging violations of CEQA and the Planning and Zoning Law (Gov. Code, § 65000 et seq.). It named the city as defendant and respondent, and named as real parties in interest Cilker Orchards Management Corp. and Erik Schoennauer. Cilker's attorney notified plaintiff's counsel by letter dated January 31, 2018 (two weeks after the 30-day statute of limitations expired) that Microsoft had acquired the property and that the city had filed a second NOD.

Plaintiff filed the operative first amended petition for writ of mandate in March 2018, over a month after receiving the letter from Cilker's counsel and more than 70 days after the second NOD was filed with the county clerk. The amended petition

4

alleged the same violations, but added Microsoft Corporation and Greg Deeney as real parties in interest.

Microsoft and Deeney demurred to the CEQA cause of action in the amended petition, arguing that the CEQA action was time-barred because Microsoft and Deeney were not added to the case until after the limitations period had run. The city joined in the demurrer. Cilker and Schoennauer also demurred to the amended petition, on the basis that they were no longer real parties in interest because they had sold the property to Microsoft before the project was approved.

The trial court sustained the Microsoft and Deeney demurrer without leave to amend, finding the initial petition defective for failing to join an indispensable party (Microsoft), and the CEQA cause of action in the amended petition untimely because Microsoft was not sued within 30 days after the second NOD was filed. The trial court rejected plaintiff's estoppel and relation back arguments. The trial court also sustained the Cilker and Schoennauer demurrer without leave to amend as to all causes of action. After plaintiff voluntarily dismissed its Planning and Zoning Law cause of action, the trial court entered a judgment dismissing all parties, from which plaintiff appealed as to the city and Microsoft.

## II.    DISCUSSION

We review de novo a judgment of dismissal after demurrer. (*Doan v. State Farm General Ins. Co.* (2011) 195 Cal.App.4th 1082, 1091 (*Doan*).) We will reverse the dismissal if the allegations in the complaint state a cause of action "under any legal theory." (*Ibid.*) We assume the truth of all facts alleged in the complaint except for facts contradicted by judicially noticeable materials. (*Stoney Creek Orchards v. State of California* (1970) 12 Cal.App.3d 903, 906; *SC Manufactured Homes, Inc. v. Liebert* (2008) 162 Cal.App.4th 68, 82.)

When a local public agency approves a project and certifies an EIR, it must "file a notice of determination within five working days after the approval or determination

5

becomes final, with the county clerk of each county in which the project will be located." (§ 21152, subd. (a).) "Among other things, the NOD must identify and briefly describe the project; identify the lead agency and responsible agency (if applicable); state the date of project approval and the agency's environmental impact determination; report that a negative declaration, mitigated negative declaration or EIR has been adopted, and give the address where it may be examined; and state whether mitigation measures were required as a condition of approval." (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 52 (*Green Foothills*).)

CEQA's statutory scheme evidences a clear legislative intent to "ensure extremely prompt resolution" of lawsuits claiming violations of the statute. (*Stockton Citizens for Sensible Planning v. City of Stockton* (2010) 48 Cal.4th 481, 500.) A legal challenge to a project approval based on a CEQA violation must be commenced within 30 days after the date a valid NOD is filed. (§ 21167, subd. (c).) As summarized by the Supreme Court, if a "valid NOD has been filed [citations], *any* challenge to that decision under CEQA must be brought within 30 days, regardless of the nature of the alleged violation." (*Green Foothills*, *supra*, 48 Cal. 4th at p. 48.) However, if a notice is "materially defective" because it omits one or more required elements, courts have found a 180-day statute of limitations applies. (See *id.* at pp. 52–53; § 21167, subds. (a), (d).) "The application of a statute of limitations based on facts alleged in the complaint is a legal question subject to de novo review." (*Gilkyson v. Disney Enterprises, Inc.* (2016) 244 Cal.App.4th 1336, 1340.)

In addition to naming as a defendant the agency that approved the project, a petitioner must name as a real party in interest the "person or persons identified by the public agency" in the NOD. (§ 21167.6.5, subd. (a).) Plaintiff does not dispute that Microsoft is both a necessary and indispensable party to this CEQA action. Failure to join an indispensable party is a ground for demurrer. (Code Civ. Proc., §§ 430.10, subd. (d); 389.) And failure to include a necessary and indispensable party as a real party

6

in interest within the applicable limitations period is a ground for dismissal. (*Sierra Club, Inc. v. California Coastal Com.* (1979) 95 Cal.App.3d 495, 502; accord *Save Our Bay, Inc. v. San Diego Unified Port Dist.* (1996) 42 Cal.App.4th 686, 699.)

If a person makes a written request to a public agency, in advance of a specific project's approval, to receive the NOD for the project, "then not later than five days from the date of the agency's action, the public agency shall deposit a written copy of the notice addressed to that person in the United States mail, first class postage prepaid." (§ 21167, subd. (f).) But significantly, the "date upon which this notice is mailed shall not affect" the statute of limitations. (*Ibid.*)

## A. THE CITY VIOLATED CEQA BY NOT SENDING PLAINTIFF THE SECOND NOD

A public agency must send the relevant notice (here, the second NOD) within five days after the project is approved to any person who has "made a written request to the public agency for a copy of the notice ... prior to the date on which the agency approves or determines to carry out the project." (§ 21167, subd. (f).) Espinoza emailed the project manager a month before the project was initially approved by the city council, asking "to be placed on the noticing list and given dates and time[s] of any public hearings" for the project. He also asked specifically for the NOD by email to the project manager after the project was initially approved in October, and again after the city council re-approved the project in December. Despite Espinoza's requests, the city inexplicably failed to send him the second NOD. The city violated section 21167, subdivision (f) by failing to do so. But as we will explain, CEQA contains no remedy for that violation, and it is not properly our role to create one where the Legislature has not.

## B. PLAINTIFF FAILED TO TIMELY SUE MICROSOFT

It is undisputed that plaintiff did not sue Microsoft until more than 30 days after the second NOD was filed with the county clerk. Plaintiff's addition of Microsoft to the case via the amended petition was untimely if a 30-day limitations period applies. Plaintiff makes two arguments based on the CEQA statutory scheme to circumvent the

7

30-day statute of limitations: that the longer 180-day CEQA statute of limitations applies; and that plaintiff's untimely filing should be excused because the city violated CEQA by not sending Espinoza the second NOD despite his written request to receive all notices related to the project.

When an NOD is materially defective for not including all information required by CEQA and the CEQA Guidelines (Cal. Code Regs., tit. 14, § 15000 et seq.), courts have applied CEQA's fallback 180-day statute of limitations. (See *Green Hills*, *supra*, 48 Cal.4th at pp. 52–53.) Plaintiff does not claim that anything in the second NOD was incorrect or missing. Plaintiff instead suggests that the reasoning of the defective notice cases should apply here because the effect of "the City's posting two NODs containing conflicting, contradictory, legally operative information concerning the identity of the Project applicant, where it neither rescinded the first NOD nor otherwise publicly indicated that it was inaccurate, is that the City never posted a legally adequate NOD at all." That assertion is not supported by the authorities plaintiff cites. The second NOD contained all required information and was therefore not defective. As a legally proper NOD, it triggered the 30-day statute of limitations to challenge the project. (§ 21167, subd. (c).) The trial court therefore correctly concluded that plaintiff's initial petition was defective for failing to name Microsoft, and also that the statute of limitations barred the amended petition which was filed more than 30 days after the second NOD was filed.

Plaintiff argues any failure to timely sue Microsoft is not plaintiff's fault but the city's, because the city violated section 21167, subdivision (f) when it failed to send Espinoza the second NOD as he had requested.[2] We agree that the city violated CEQA

---

[2] Plaintiff also suggests the city violated the notice requirements of section 21092.2, subdivision (a), but that section applies only to individuals who have "filed a written request for notices with either the clerk of the governing body or, if there is no governing body, the director of the agency." (§ 21092.2, subd. (a).) There is no evidence any member of plaintiff's organization requested notices from either of those officials.

by not sending the second NOD. But that violation cannot excuse or cure the amended petition's untimeliness because section 21167, subdivision (f) itself provides that the "date upon which [the NOD] is mailed shall not affect" the statute of limitations to commence a CEQA action. The NOD is the limitations trigger under CEQA. The Supreme Court has made clear that it is the "responsibility of potential litigants to review these notices, and any revisions, with care." (*Green Hills*, *supra*, 48 Cal.4th at p. 54.) Although the city failed to send the second NOD to Espinoza, that NOD was duly filed with the county clerk and available for review by all potential litigants before plaintiff filed its initial petition. It is not for us to legislate a remedy for the city's violation of section 21167, subdivision (f), particularly where the remedy plaintiff seeks would conflict with express provisions of that very statute.

Plaintiff claims, without citation to authority, that while the "mere posting of a NOD at the County Clerk's office may work to provide constructive notice to the public generally, it cannot work to provide actual or constructive notice to a party who has properly requested the NOD" under section 21167, subdivision (f). The argument is contrary to settled principles of filed notices providing constructive notice to *all* potential litigants. (*Stockton Citizens for Sensible Planning v. City of Stockton, supra,* 48 Cal.4th 481, 502.) We also note that plaintiff appears to have had actual notice of Microsoft's status well before the limitations period expired. Plaintiff's members participated in city council hearings at which Microsoft was identified as the property owner, and the public notice for the December hearing listed Microsoft as the owner.

Plaintiff complains that affirming the judgment will force future CEQA petitioners to "make repeated trips to the County Clerk's office to check for newly posted notices, or make repeated requests to agency officials, just to ensure that no superseding NOD was ever posted." We observe that notices of the sort at issue here are increasingly available electronically which facilitates public access to them. We nonetheless understand and share plaintiff's frustration at not being able to rely on the environmental document sent

9

by the city in response to specific requests. That said, the Legislature has identified the NOD as the trigger for the statute of limitations, and the Supreme Court has emphasized that potential litigants must pay close attention to those filings before initiating litigation. We conclude, therefore, that the trial court properly applied the foregoing standards and did not err in finding plaintiff's amended petition untimely under CEQA.

## C. THE RELATION BACK DOCTRINE

Plaintiff argues the trial court erred by not applying the relation back doctrine of Code of Civil Procedure section 474 to allow it to substitute Microsoft in place of one of the fictitiously named Doe real parties in interest. "When the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint, or the affidavit if the action is commenced by affidavit, and such defendant may be designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly." (Code Civ. Proc., § 474.) A plaintiff's ignorance must be genuine and based on a lack of knowledge of the defendant's connection with the case. (*General Motors Corp. v. Superior Court* (1996) 48 Cal.App.4th 580, 594.) If a plaintiff satisfies those requirements, the amendment relates back to the filing of the original petition or complaint such that the "statute of limitations stops running as of the date the original complaint was filed." (*Id.* at p. 589.) Trial courts also have discretion, "in furtherance of justice, and on any terms as may be proper, [to] allow a party to amend any pleading or proceeding by adding or striking out the name of any party." (Code Civ. Proc., § 473, subd. (a)(1).)

As we have discussed, the statute of limitations to challenge the adequacy of an EIR begins to run when a valid NOD is filed. We acknowledge the city's notices and project-related documents, both at the planning stage and in the first NOD, sometimes referenced the former project applicant instead of Microsoft. But the legally operative second NOD, which was filed with the county clerk and readily available to potential litigants, correctly referred to Microsoft. The city's filing of the second NOD with the

10

county clerk provided constructive notice of Microsoft's identity precluding plaintiff's ability to claim genuine ignorance. There is also evidence that plaintiff (through individual members) likely had actual notice that Microsoft was referred to as the project applicant during at least one public hearing on the project and in the public notice of the second approval hearing. And plaintiff received actual notice of the second NOD from Cilker's attorney in January 2018. Despite learning about the second NOD by the end of January 2018 at the latest, plaintiff did not file its amended petition until March 2018 – a delay longer than even the initial limitations period. Given the constructive and likely actual notice of Microsoft's identity as the project applicant, any claim of plaintiff's ignorance of that status is unreasonable as a matter of law.

Plaintiff points to no case in which the relation back doctrine has been allowed where a party had constructive notice of the identity of a fictitiously named defendant. Plaintiff cites *Garrison v. Board of Directors* (1995) 36 Cal.App.4th 1670 using the following parenthetical summary: "amended CEQA writ petition filed after 30-day limitations period relates back to date [of] original petition's timely filing, where no change to 'basic set of facts' and amendment only addressed party identities." Plaintiff omits the crucial detail that the substituted party in *Garrison* was a *plaintiff*, not a defendant or real party in interest. (*Id.* at p. 1678 [noting the "notice policy [of the statute of limitations] was therefore satisfied [because the defendant] received notice of the nature of the action within the 30-day limitations period"].)

Plaintiff also argues without citation "the burden is on a defendant asserting a statute of limitations defense to prove that a petitioner 'knowingly acted in bad faith and that actual prejudice to the substituted party occurred due to the timing of the substitution.' " We have been unable to locate any authority containing the language quoted by plaintiff. To the contrary, even one of plaintiff's own authorities contains this statement: "[I]f the identity ignorance requirement of [Code of Civil Procedure] section 474 is not met, a new defendant may not be added after the statute of limitations

11

has expired even if the new defendant cannot establish prejudice resulting from the delay." (*Woo v. Superior Court* (1999) 75 Cal.App.4th 169, 177.) We see no error in not applying Code of Civil Procedure section 474.

### D. ESTOPPEL

Plaintiff argues the city and Microsoft should have been equitably estopped from asserting the statute of limitations defense. To rely on the doctrine of equitable estoppel, plaintiff must show: (1) the city knew about the second NOD; (2) the city intended to keep plaintiff from learning about the second NOD by sending Espinoza the first NOD and failing to send him the second NOD; (3) plaintiff did not know about the second NOD; and (4) plaintiff detrimentally relied on Espinoza not receiving the second NOD despite his written request. (See *Feduniak v. California Coastal Com.* (2007) 148 Cal.App.4th 1346, 1359.) When, as here, equitable estoppel is alleged against a public entity, the plaintiff must also show that the "injustice which would result from a failure to uphold an estoppel is of sufficient dimension to justify any effect upon public interest or policy which would result from the raising of an estoppel." (*City of Long Beach v. Mansell* (1970) 3 Cal.3d 462, 496–497.) The "existence of an estoppel is generally a question of fact" (*Albers v. County of Los Angeles* (1965) 62 Cal.2d 250, 266), but estoppel can be denied if the asserted reliance was unreasonable as a matter of law. (*Penn-Co v. Board of Supervisors* (1984) 158 Cal.App.3d 1072, 1081.)

Even assuming arguendo that the city's failure to send Espinoza the second NOD was intentional rather than inadvertent, plaintiff's reliance on that failure would be unreasonable as a matter of law. As with our discussion of the relation back doctrine, plaintiff's equitable estoppel argument fails because the city's timely filing of the second NOD with the county clerk gave constructive notice to all potential litigants of the correct parties to name in a CEQA action. *Citizens for a Responsible Caltrans Decision v. Department of Transportation* (2020) 46 Cal.App.5th 1103, cited by plaintiff, is factually distinguishable. In that case a state agency promised a citizens group it would circulate

12

an EIR and file an NOD, but it instead filed a notice of exemption for the project, which the citizen's group did not become aware of until after the applicable statute of limitations had run. Finding that the agency was equitably estopped from asserting a time bar on demurrer, the appellate court stated, "Caltrans knew of its position that the Project was exempt from CEQA and would approve the Project and file an NOE, but nevertheless made misrepresentations to CRCD and the public, as described ante, that it would approve the Project only after circulation of the FEIR and then would file an NOD in compliance with CEQA." (*Id.* at p. 1133.) In contrast here, the city's failure to provide individual notice to Espinoza did not affect the fundamental process followed nor the filing of public notice of that process (in the form of the second NOD).

## E. LEAVE TO AMEND

A trial court abuses its discretion when it sustains a demurrer without leave to amend if there is a reasonable possibility any defect identified by the defendant can be cured by amendment. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.) Plaintiff argues the trial court should have allowed leave to amend the petition to assert estoppel against the city, and to allege that the city violated section 21167, subdivision (f) by failing to send Espinoza the second NOD.

As we have explained, the elements of estoppel are not met here, and the city's violation of section 21167, subdivision (f) did not affect the requirement to name Microsoft as a real party in interest before the limitations period expired. As neither of plaintiff's proposed amendments would cure the failure to timely sue Microsoft, the trial court did not abuse its discretion by sustaining the demurrer without leave to amend.

## III. DISPOSITION

The judgment of dismissal is affirmed. Each party shall bear its own costs on appeal.

13

_____

Grover, J.

**WE CONCUR:**

_____

Greenwood, P. J.

_____

Danner, J.

**H046458 -** *Organizacion Comunidad De Alviso v. City of San Jose*

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Case No. CV321687 |
| Trial Judge: | Hon. Helen E. Williams |
| Counsel for Plaintiff/Appellant<br>ORGANIZACION COMUNIDAD<br>DE ALVISO | Mark Raymond Wolfe<br>M. R. Wolfe & Associates, P. C. |
| Counsel for Defendant/Respondent<br>CITY OF SAN JOSE | Margo Laskowska<br>Office of the City Attorney<br>City of San Jose |
| Real Party in Interest/Respondent<br>MICROSOFT CORPORATION | Arthur F. Coon<br>Matthew C. Henderson<br>Miller, Starr & Regalia |